# SUPERIOR COURT.

## SPRING SESSIONS.

## 1879.

---

### ROBERT R. RUSSELL *v.* GEORGE R. STOECKEL.

A purchaser of personal property at a sale made by a public officer of whatever kind under process of law, has the right to enter upon the premises of the defendant in the execution in a peaceable and orderly manner without obtaining any permission from him, and to take and carry them away.

If the issue to be tried before the jury be whether the proceedings and acts of the constable in levying upon and selling such property were fraudulent and contrary to the provisions of the act of assembly in such case made and provided, and they should be so found by the jury, and that they were committed with the knowledge and consent of the plaintiff in the process, who purchased them, then he will be liable to the defendant in it in an action of trespass *quare clausum fregit* for entering his premises and taking and carrying away the personal property purchased by him under such process in damages to the value of it.

To constitute fraud on the part of a public officer in the execution of legal process it must be shown that he designedly and willfully acted with respect to the defendant in such a covenous, deceitful, treacherous, and dishonest manner as to deprive him of some right or benefit to which he was entitled or subject him to some damage or injury; and if done with the knowledge and consent of the plaintiff in the process, it would be fraudulent in both of them, and in either case the sale made would be treated in the tribunal out of which the process issued as utterly void, and the plaintiff would not be allowed to derive any benefit from it. So also, if a mere purchaser at such a sale should conspire with the officer to commit the fraud, he could not be allowed to retain any property bought by him at such fraudulent sale.

But although the doings of an officer with or under his process may be irregular, yet, if they are honest, they are so far valid as not to affect the rights of parties taking title under him. Because in that case the validity of the sale cannot be collaterally controverted or inquired into in a proceeding

464

before another tribunal; and in case of a sale by a constable voidable for a mistake or irregularity committed by either the justice or the constable, it is to be objected to before the justice who issued the process on the return of it.

ACTION of trespass *quare clausem fregit* against the defendant for breaking and entering the close of the plaintiff described in the declaration, and taking and carrying away therefrom and converting to his own use a quantity of corn and fodder belonging to the plaintiff. Among other pleas, the defendant pleaded that he had before that recovered a judgment against the plaintiff before a justice of the peace on which execution had been issued and levied on the said corn and fodder, and by virtue of which the same was afterward advertised and sold, and that at the sale he became the purchaser thereof and took a bill of sale therefor from the constable, and was thereby entitled to enter the said close without force and to take and carry away the same, as he did, to which the plaintiff replied that the proceedings and acts of the constable in levying upon and selling the goods and chattels of the said Robert R. Russell, as in the said plea mentioned, were fraudulent and against the provisions of the act of the General Assembly of this State in such case made and provided ; and to which the defendant rejoined by traversing it and joining issue upon it.

From the evidence it appeared the levy and sale included other goods than the corn and fodder, and among them a stallion valued at three hundred dollars by the appraisers under the execution, and that the goods were advertised to be sold by the constable at eleven o'clock A. M. on the 19th of November following, but were not sold until late in the afternoon of that day, when there were but two or three persons present, the plaintiff in the execution and the defendant in the suit being one of them, who became the purchaser of all the goods for the sum of two dollars and ten cents. It also appeared on the production of the record of the suit between the parties before the justice of the peace that the judgment was recovered on the 5th day of May, 1877, but the execution issued upon it erroneously referred to and recited the date of its recovery to have been on the 3d instead of on the 5th day of May, 1877.

And on the ground of this discrepancy and variance in the

record the counsel for the plaintiff contended that it should be rejected and ruled out of evidence as manifestly a false or incorrect record.

*The Court,* however, overruled the objection and admitted it in evidence. It was decided in the case of *Pennington* v. *Chandler,* 5 *Harr.* 394, that a purchaser at constable's sale acquires property though the proceedings be irregular if founded on a judgment and execution, and that the validity of the sale cannot be controverted collaterally; but a question of fraud or bad faith is always open, because fraud vitiates every sale, however public it may be. It is a familiar principle of law that the proceedings of one judicial tribunal cannot be collaterally contradicted or inquired into in another proceeding before another tribunal unless it comes up by due course of law for a rehearing or correction of errors in the latter; and it is well that is so, for otherwise writs of error in many cases would be unnecessary, and in appeals from a justice of the peace the appellate court or this court in the trial of the case on the appeal before a jury would be compelled to act as a court of error, and such a trial would necessarily involve not only an examination and consideration of the facts and evidence in it, but also of the errors in the record of it, a commingling and confusion of issues and inquiries which the law is careful to avoid and will not tolerate. It was also contended by the counsel for the plaintiff that if there was a material and substantial error in the record or any irregularity on the part of the magistrate or constable in the legal proceedings now offered in evidence, and they should be admitted, it would become the duty of the court to instruct the jury that the plea of the defendant founded upon it could not avail him, but was no defense in this action. We do not think so. No case has been cited and none can be found, we think, in which any court has reviewed and set aside in effect the proceedings in another court to judgment, execution, and sale thereon of the defendant's goods in a case in which such court had jurisdiction of the cause of action and of the parties to it, and it so appeared by the record. That is to say, where it was merely used or introduced as matter of evi-

dence in another case in which other questions and issues were involved and were directly before the latter tribunal by virtue of the pleadings in it. This in our opinion settles the question if we had not authority in *Herman on Execution, sec.* 62, and in the cases there cited, to sustain us in so deciding with respect to the misrecital in the writ of execution of the date of the judgment on which it was issued, and on the same day on which the judgment was rendered as is stated in the record, that is to say, on the 5th instead of on the 3d day of May, 1877. It is true the execution is an essential part of the evidence offered by the defendant to sustain his plea of justification in entering the close of the plaintiff and taking and carrying away the corn and fodder mentioned, and on the offer of it in evidence and the objection made to its admissibility, it is necessarily before the court for our examination and consideration, but on inspection we find that the record itself discloses enough on its face to correct the error referred to and to clearly connect the execution with the judgment. It correctly states the amount of the judgment and the time from which interest runs upon it, the justice of the peace before whom it was rendered, and a proper time of return, and the writ of *venditioni exponas* issued by the justice follows regularly upon the *fieri facias,* and is a command to sell the goods levied upon by it; besides, the record of the judgment gives the number of the *fieri facias* issued upon it, and the number of the writ corresponds with it. The only thing wrong in respect to it is that in the *fi. fa.* the judgment is stated to have been given on the 3d day of May, 1877, whereas it was in fact given, as the record of it shows, on the 5th day of May, 1877. And this is clearly a clerical error merely on the part of the justice, a mere inadvertence, and practically so immaterial in this case that we should consider it almost a reproach to the administration of justice to suffer it to defeat the admission of the record in evidence for the purposes offered by the defendant, and we therefore admit it.

*Robinson* (*Layton* with him), for the plaintiff: The breaking and entering of the close and the carrying away of the corn and fodder of the plaintiff by the defendant in the action was

a fact admitted by the only plea of the defendant on which he relies for the defense of it, to which the plaintiff had replied that the sale of them by the constable was fraudulent and void, and if so, then it conferred no right upon the defendant as the purchaser of them at such a sale to enter the premises of the plaintiff and to take and carry them away and convert them to his own use. As the defendant was the plaintiff in the judgment and execution under which the sale was made by the constable, and was present at it during the whole time it was pending and in progress on the day it took place, for it was advertised to begin at eleven o'clock in the morning, but did not commence until late in the afternoon, when the whole amount of the goods and chattels levied on and advertised to be sold under the execution, worth several hundred dollars, was struck off to the defendant as the highest if not the only bidder for the small sum of two dollars and ten cents, and when including him there were not more than two or three persons present, and as the sale was at his instance and for his benefit, and was subject to his control and direction, and he had an interest to depress the sale of the goods and to buy them as low as possible, and was present and in communication with the constable during the whole time, it was but fair and reasonable to presume that whatever was done by the constable under the circumstances was done by his express orders and directions, or at least with his sanction and approval, and which made him a party to and responsible for any wrong or fraud contemplated and committed by the constable in the sale of the goods.

Our replication to the defendant's plea of justification is that the constable's sale was fraudulent and void, and which the defendant by his rejoinder has directly traversed and denied, and upon that issue the only question to be considered and determined is whether it was so or not. Fraud, if established by the evidence to the satisfaction of the jury, in such a case as this will vitiate a constable's sale under execution process. *Pennington* v. *Chandler*, 5 *Harr*. 394. But a *bona fide* purchase of the goods at such a sale is not affected by the fraud, nor is it affected by any irregularity in the proceedings by the justice or the constable. If, however, the plaintiff in the execution is

a party or is privy to the fraud, and becomes the purchaser of the goods at such sale, he takes no right or title to them, for the sale as to him is void in law. *Herman on Executions, secs.* 419, 422, 423, 424, 487, 513; *Hazzard* v. *Burton,* 4 *Harr.* 62 ; *Booth's Exr.* v. *Alfrey's Admr.,* 5 *Harr.* 129 ; 1 *Root* 58 ; 2 *Houst.* 510; 4 *Wend.* 100; *Rol. on Judicial Sales, secs.* 570, 571, 572, 573, 574, 575, 864, 865, 866, 1101, 1114, 1115 ; *Rev. Code* 673, 674. As to the point already passed upon by the court on the motion to rule out the record of the judgment and execution when offered in evidence by the counsel for the defendant on the ground of the discrepancy between them as to the date of the judgment then noted but not argued, they now asked the court to reconsider it and to charge the jury that, notwithstanding the record of them was in evidence, that the execution or writ of *fi. fa.,* as it therein appeared, was not sufficient to sustain the plea of justification pleaded by the defendant, as no proof of any judgment recovered on May 3d, 1877, had been produced, and without an execution on such a judgment the plea could be of no avail to him. A sale on an execution which varies from the judgment is void. *Herman on Executions, sec.* 424; 1 *Yates* 300; 4 *J. J. Marsh.* 597 ; 2 *Mass.* 387; 17 *Mass.* 240 ; 9 *Mass.* 138, 242 ; 1 *Mass.* 86 ; 14 *Mass.* 20; 13 *Mass.* 483.

*Moore* (*Cullen* with him), for the defendant: In the case cited of *Pennington* v. *Chandler,* 5 *Harr.* 394, the court held that a sale by a constable under a judgment recovered before a justice of the peace and execution issued thereon cannot be collaterally controverted or inquired into in this or any other court on the ground of any irregularity, error, or impropriety apparent in the proceedings of the case, whether committed by the justice or the constable,. but such matters should be objected to before the justice at the return of the execution and sale on an application to set it aside if the reason for it should appear to be sufficient for it in his judgment. *Rol. on Judicial Sales, secs.* 6, 75, 1139 ; *Herm. on Execu., secs.* 62, 328 ; 4 *Taunt.* 322 ; 1 *Halst.* 414.

The facts and circumstances proved in the case and on which the issue of fraud joined in it turned and depended are suffi-

ciently referred to and stated in the charge of the court to the jury to dispense with any further statement of the evidence in relation to them.

*The Court, Comegys, C. J., charged the jury:*

GENTLEMEN OF THE JURY : This is an action brought by the plaintiff, Russell, to recover from the defendant, Stoeckel, damages for entering upon his premises and carrying therefrom a quantity of corn and fodder and converting them to his use. In form it is an action of trespass *quare clausem fregit*, and, therefore, the alleged illegal entry upon the plaintiff's premises is the gist of the action or *gravamen*, and the taking and carrying away the corn and fodder of the defendant is matter of aggravation of damages.

It appears from the evidence in the case that Robert Russell was the tenant of certain premises, being a farm in Broad Creek Hundred, the property of Robert J. Lambdin, and that after the 19th of November, 1877, and before December, the defendant, George Stoeckel, entered therein with his teams and took and carried therefrom for his own use a quantity of corn and fodder proved by witnesses to be of the value together of thirty-four dollars. Of these facts there can be no doubt. It therefore follows that if the defendant has not shown a right to do so he was guilty of the trespass complained of, and should be held liable for its consequences, or the damage sustained by the plaintiff—which damage the plaintiff claims was one hundred dollars, though in his declaration he has demanded a greater sum. This is certain also. The case of the plaintiff is set forth by him in the usual mode in the declaration and is answered by the defendant by various pleas, seven in all. Six of them are the usual ones in cases of trespass to realty, and as no evidence was offered by the defendant under any of them but under the seventh only, it will not be necessary to refer to them again. This seventh plea is what is called a justification or excuse for the alleged trespass, and sets forth a judgment by the defendant against the plaintiff recovered on a judgment note on the 5th day of May, 1877, for the debt of fifteen dollars, besides interest and costs, before James P. W. Kollock, Esq., a justice of the

peace of this county, the issuance of an execution of *fieri facias* thereon on the same day, being No. 293, a levy by constable Lynch in virtue thereof and return, a *venditioni exponas* to dispose of the levy, being No. 328, and return of sale of part of the goods for the sum of two dollars and ten cents, and a setting apart of the residue appraised at the value of two hundred dollars to the defendant's use under the exemption law of this State. It also sets forth that the goods sold were purchased by the defendant and duly assigned to him by the constable by a bill of sale. In support of this plea the defendant produced and proved the said judgment, the writs of *fieri facias* and *venditioni exponas* with their respective returns, the allotment of part of the property levied on to the defendant, and a formal bill of sale from the constable to him for the goods he purchased, to wit, the corn and fodder taken away from the possession of the plaintiff. As these facts are all properly pleaded by the defendant under his plea of justification, the production of the proof of them submitted by him would seem, without looking farther, to be a complete defense to the action.

A purchaser of personal property at a sale made by a public officer of whatever kind, under process of law, has the right to enter upon the premises of the defendant in the execution, in a peaceable and orderly manner, without obtaining any permission from him and to take and carry them away. This necessarily results from the nature of the proceedings, which are judicial in their character, and without the existence of which right judicial sales would be a nullity; for no man would buy if he were driven to his action to obtain possession. The law of the land gives to a purchaser at such a sale the same right that he would have if he bought at private sale of the owner. The sale itself would necessarily include the right to take possession. This is not disputed by the plaintiff, but is admitted.

The plaintiff answers the plea of justification under the proceedings before and process issued by the justice by what is called in law language a replication and is in fact a reply, in these words, in brief—"that the proceedings and acts of the said Elihu M. Lynch, the said constable, to whom the said writs of *fieri facias*, No. 293, and *venditioni exponas*, No. 328, were de-

livered to be executed in levying upon and selling the goods and chattels of the said Robert R. Russell, etc., as in the said seventh plea mentioned, were fraudulent and against the provisions of the act of the General Assembly of this State in such case made and provided, and this," etc.   I have extracted all of the replication necessary for the consideration of the question it presents.   To this pleading the defendant answers by a rejoinder, as it is called, traversing or denying the fraud alleged, and issue is understood to be tendered and accepted—that is, one party asserts fraud in the proceedings of the constable, and the other denies it, and both have placed their case before the jury for decision.   The case then presents a single issue for you to try, the others presented by the pleadings all being immaterial (except of entering the premises, which is admitted,) if this is found for the defendant—and that is, were the proceedings and acts of the constable, Elihu M. Lynch, fraudulent ?  If they were, then the plaintiff, Russell, is entitled to your verdict for the value, according to all the evidence, of the corn and fodder taken away by Stoeckel after the 19th of November, 1877, the day of sale; that value is to be fixed as of that time, that is, at what it was then worth, and you may add to that amount interest on the value up to the present time.   To express the matter more technically but none the less intelligently, if these acts and proceedings of the constable were fraudulent (and if they were, the defendant, Stoeckel, must take the consequences of them, for they were done under his process with his knowledge and concurrence), the plaintiff is entitled to have you find a verdict of guilty against the defendant and to an assessment or award of damages as before stated.   The case, then, turns out to be a simple one after all the time occupied in the trial of it before the jury, and turns upon the question alone of fraud or no fraud in the constable's doings in the execution of the process in his hands. Whether or not there was such fraud is a mixed question of law and fact ; for first you must be told what fraud is with respect to cases like the present—that is, execution process.

To constitute fraud on the part of a public officer in the execution of legal process, it must be shown that he designedly and willfully acted with respect to the defendant in such a cove-

nous, deceitful, treacherous, or dishonest manner as to deprive him of some right or benefit to which he was entitled, or subject him to some damage or injury. It is very hard to define fraud at any time by general language, and it can be best comprehended oftentimes by examples of it. It would be fraudulent in an officer to willfully mislead a defendant as to the time when he would sell his property, and thus lead him to go to such a distance from home as would disable him from being present at the sale. It would also be a fraud in him willfully to select as one of those to allot him his exemption goods a person whom he knew to be hostile to him, and therefore unfit for that service; also to sell his property in bulk instead of by parcels, to his damage. Many more instances might be given, but these are sufficient for our present purpose. If such acts were done with the knowledge and consent of the plaintiff in the process, it would be fraudulent in both of them; and in either case the sale made would be treated in the tribunal out of which the process issued as utterly void and of no effect, and the plaintiff would not be allowed to derive any benefit from it. So, also, if a mere purchaser at such a sale conspired with the officer to commit the fraud, he would not be allowed to retain any property bought by him at such a fraudulent sale. Fraud, wherever it can be established, vitiates all proceedings had or done in pursuance of it, on account of the effect of it upon all transactions, and by reason also of the legal and just theory that men are presumed to be honest and not dishonest; but fraud must always be established by proof, and is not to be presumed. It can be proved, however, as well by circumstances as by positive evidence.

But were the proceedings and acts of the constable in this case with respect to levying the execution and his subsequent conduct under the other process fraudulent? That is a question for the jury. If they were, then, as they were all under the supervision and direction of the plaintiff through his cognizance of them, he is bound by them and cannot escape the consequences. And here let me say upon this very point that although the doings of an officer with or under his process may be irregular, yet, if they are honest, they are so far valid as not

30

to affect the rights of parties taking title from him.   If it were otherwise, men would hesitate to buy at judicial sales.   There is a marked distinction between things void and voidable; with respect to the former, no rights can accrue from them—they are mere nullities; but with respect to the latter it is otherwise— they are valid until avoided in a proper manner.   A sale under process issued upon a judgment void for any purpose confers no title whatever upon a purchaser; but where it is not void, though it may be defective, a purchaser under process issued upon it would take a title that no court would disturb, for it would be good until shown to be otherwise.

It is the province of the jury to decide upon the facts in all cases presented to them, and this one forms no exception.   You are to determine, gentlemen, whether in this case the acts of the constable were such as were fraudulent from what we have told you about the law, and if so whether the defendant was a party to them.   We think there is no room to doubt that in the proceedings and acts of the constable he and the defendant were one; therefore if he committed fraud the defendant is *particeps criminis* and equally guilty.   But it is not essential to a finding of fraud that you should be satisfied from the testimony that the defendant, Stoeckel, was a party to it, for we charge you that if you should believe the constable alone was guilty of the fraud you will be justified in giving your verdict for the plaintiff. The issue presented is whether or not the proceedings and acts of the constable in the execution of his duty under these executions were fraudulent.   That is the question and the only one made by the plaintiff's replication to the defendant's plea of justification.   The defendant has accepted it as the matter in controversy by his rejoinder and tendered issue upon it, which has been accepted by the plaintiff.   He must therefore abide by the consequences of his rejoinder.   The question is not therefore an open one, whether fraud in the constable. alone would impair the sale in this case, but whether there was fraud in him at all.   It is not disputed that if there were the sale would be invalid and the plaintiff entitled to recover for the trespass to his possession, which is the pith of the action, and damages above the nominal ones for that bare act by way of aggravation

or increase on account of taking away the corn and fodder. The defendant might have raised the question whether the sale was invalid on account of fraud on the part of the constable. By taking a different course in his pleading from that pursued by him he might have required the plaintiff to set forth in his replication the acts and proceedings relied upon as the evidence of the alleged fraud, and by a demurrer have raised the question whether they constituted fraud. He did not choose to do so, however, but was willing to rest his defense upon the issue of fraud or no fraud in the constable alone.

Now, was there fraud in the constable or not? This is a question for you alone to try, and with which this court now has no connection, having endeavored to give you to understand what would constitute fraud in him. There are two facts relied upon by the plaintiff in support of his allegation of fraud— first, the proceedings connected with the allotment of the exempted articles, the steam mill and yoke of oxen, and second the sale of the residue of the property of the defendant for the merely nominal sum of two dollars and ten cents.

We shall not enter into any particular examination of the testimony offered by the defendant to negative the inference sought to be drawn by the plaintiff from these acts. With respect to the first, we have to say generally that while the evidence is not by any means entirely clear and conclusive in relation to the plaintiff's assertion of title to the steam mill, yet evidence has been adduced by the defendant which would seem to show that he treated it as his, while, on the other hand, the purchaser of the land with it upon it, at the sheriff's sale made prior to these proceedings, says that he himself claimed to be the owner of it, and refused to allow the plaintiff, Russell, to remove it from the premises sold except upon conditions which the plaintiff did not comply with. Taking the testimony in relation to this subject on both sides, if you should feel justified in concluding that the plaintiff did not assert his title to the mill and consent to its assignment to him, but that it was put upon or allotted to him by the freeholders, there would not be evidence of fraud on the part of the constable to support the issue, unless it has been shown that the freeholder selected by him acted under a corrupt

influence proceeding directly from the constable himself. We have not heard any such evidence.

Concerning the sale itself, we feel it just to say to you that there does not appear to our minds by any conclusive proof that actual fraud was practiced here; but it appears by the testimony offered by the defendant that the plaintiff was present when it took place. He has not furnished us with any evidence that he made any protest or objection to it.

It is unnecessary to consider various questions of law submitted by the counsel on both sides during the progress of the examination of the testimony, because the only issue is fraud or no fraud in the constable—a pure question of fact for the jury, and the jury alone, to decide; and we have already passed upon the only one presented which in our opinion was material in the case.

In conclusion, we say to you, gentlemen of the jury, that if you should consider, after all we have said to you about this case and what would constitute fraud under the issue, that the evidence would warrant you in deciding, upon the oaths you have taken, that any one of the acts or proceedings of the constable in this case was a fraudulent act, intended and contrived by him to take advantage of the ignorance, want of knowledge, or circumspection of the plaintiff, then you would be justified in giving him a verdict; but this must be upon the evidence before you, and not upon surmise, conjecture, or imagination; for we repeat to you emphatically that fraud must always be proved and is not to be presumed merely. In case you should find for him, then he is entitled to so much money in amount as shall represent the value of the corn and fodder, as proved to you, at the time it was carried away, and also to interest thereon from that time to the present by way of damages resulting from the breach of the plaintiff's premises and the exportation of his goods. As no damage was done to the premises of an appreciable nature, he would be entitled to nothing more under the pleadings; but if upon consideration of the testimony you do not believe the constable meant to wrong the plaintiff, although you do not approve the proceedings and acts had and done by him, your verdict should be for the defendant.